WILLIAM H. HALL, APPELLEE, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLANT.

FILED NOVEMBER 26, 1910. No. 16,213.

1. **Bankruptcy:** EFFECT OF ADJUDICATION ON GARNISHMENT. A garnishment of funds belonging to an insolvent person within four months of the time he is adjudged a bankrupt is, within the meaning of the bankrupt act of 1898, dissolved and rendered null and void by the bankruptcy proceedings.

2. ————: EFFECT OF ACT ON STATE COURTS. The bankruptcy laws of congress enacted pursuant to the powers delegated to it by the federal constitution are binding upon the state as well as the federal courts, and the state courts are bound to respect the rights acquired under them.

3. ————: ————. The provisions of subdivision *f*, sec. 67 of the bankrupt act (3 U. S. Comp. St. 1901, p. 3450, ch. 541), and the proceedings of the federal court adjudging an insolvent debtor a bankrupt are a complete defense to the enforcement of judgments rendered by state courts against a garnishee within four months of the filing of the debtor's petition in bankruptcy.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*James E. Kelby* and *Arthur R. Wells,* for appellant.

*J. O. Detweiler, contra.*

BARNES, J.

In the months of June, July, and August, 1907, the appellee, William H. Hall, the plaintiff in the court below, was a married man and the head of a family residing in Douglas county, Nebraska. He was employed by the appellant as a switchman in its yards at Omaha, and had formerly lived at Creston, in Union county, Iowa. On proceedings had in the courts of that state and county, certain judgments were entered against him, and garnishment proceedings thereon were prosecuted against the appellant, the Chicago, Burlington & Quincy Railroad Company, as follows: On April 25, 1894, one B. N. Torrey recovered a judgment against Hall in the justice court of Union county, Iowa, for $24.40 debt, with 6 per cent. interest from that date, and $3.80 costs. July 8, 1907, a transcript of that judgment was filed in the office of the clerk of the district court for said county, and on July 26, 1907, an execution was issued by the clerk of that court on said judgment, which was duly served by the garnishment of the defendant company as a debtor of Hall. On August 27, 1907, the district court entered a personal judgment against the railroad company for $39.26 debt, with 6 per cent. interest from that date, and $17.65 costs. On July 20, 1907, one J. A. Rawls brought suit against Hall in the justice court of Union county, Iowa, and on July 29, 1907, judgment was rendered in said action against him for $52.50 debt, with 6 per cent. interest, and $2.20 costs. On the same day an execution was issued on that judgment, and the defendant railroad company was garnished as the debtor of Hall. On August 10, 1907, a personal judgment was rendered in said justice court in favor of Rawls and against the defendant company for $61.60, or so much thereof as should remain in its hands after the payment of the judgment rendered in the garnishment proceedings in favor of B. N. Torrey. In both the Torrey and Rawls cases the court which rendered the judgment against Hall had obtained jurisdiction by personal service of the orig-

inal notice in the state of Iowa as prescribed by the code of procedure of that state, and the courts rendering said judgments were courts of competent jurisdiction, and had personal jurisdiction of Hall and of the Chicago, Burlington & Quincy Railroad Company, the garnishee, together with the subject matter of said actions.

It further appears that Hall filed a voluntary petition in bankruptcy in the United States district court for the district of Nebraska, and on August 7, 1907, was, by that court, adjudged a bankrupt under the statutes of the United States. In the schedule which he filed in that court the bankrupt listed the several judgments above referred to, and the claim upon which they were founded, and also listed and claimed as exempt the wages which were due him from the appellant railroad company for the months of June and July, 1907, amounting to $187, and on March 18, 1908, the referee in bankruptcy set off these wages to Hall as exempt under the laws of Nebraska. No other property was listed, and therefore no trustee in bankruptcy was elected.

It is admitted by the parties that Hall was at all of said times insolvent, and earned the wages in question during the months of June and July, 1907. In the garnishment proceedings above referred to the railroad company made answer showing its indebtedness on account of said wages, and it was upon this disclosure that the judgments in the garnishment proceedings were rendered. It also appears that, prior to the entry of the judgments against the defendant company above referred to, garnishment proceedings had been instituted in a case brought by one Locke against the defendant Hall; that the railroad company had paid and satisfied the amount involved in that proceeding, and that the remainder of plaintiff's wages, amounting to $122.40, is the matter now in controversy; that the defendant railroad company has retained, and still has, that sum in its possession, which was earned as wages by Hall, as above stated. The defendant railroad company, claiming that it was liable for the pay-

ment of the judgments rendered against it in the garnishment proceedings above described, refused to pay the money so remaining in its hands to Hall, who thereupon brought this action. The suit was commenced in the county court of Douglas county, and the plaintiff had judgment. An appeal was prosecuted to the district court, where he again had judgment, and the railroad company has appealed to this court.

The appellant's contention, briefly stated, is as follows: That the judgments rendered against it in the Iowa courts are regular and are valid, subsisting liens or claims against it, which cannot be collaterally attacked or impeached; that under the Iowa law the wages of Hall, a resident of Nebraska, were subject to garnishment in the c      ' of that state, and that the rule of the Iowa courts reiusing to give effect to Hall's Nebraska exemptions is valid, and must be enforced and respected in the courts of this state; and that such judgments constitute a complete defense to the plaintiff's action. On the other hand, it is contended by the plaintiff that by the terms of subdivision f, sec. 67 of the federal bankrupt law of 1898 (3 U. S. Comp. St. 1901, p. 3450, ch. 541) his adjudication as a bankrupt rendered the judgments of the Iowa courts against him and the defendant railroad company null and void, and therefore such judgments are no defense whatever to his right to recover in this action, and this is the only question presented for our determination.

Section 67, subdivision f, of the bankrupt act of 1898, reads: "All levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judg-

ment, attachment, or other lien shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid. And the court may order such conveyance as shall be necessary to carry the purposes of this section into effect: Provided, that nothing herein contained shall have the effect to destroy or impair the title obtained by such levy, judgment, attachment, or other lien, of a *bona fide* purchaser for value who shall have acquired the same without notice or reasonable cause for inquiry."

The effect of the foregoing provisions of the federal bankrupt law was determined by the supreme court of Minnesota in *Cavanaugh v. Fenley* (Chicago Great Western Railway Company, Garnishee) 94 Minn. 505, and it was there held that all levies, judgments, attachments, or other liens obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of his petition in bankruptcy, shall be deemed null and void in case he is adjudged a bankrupt, whether such proceeding was voluntary or involuntary; and that the garnishment of funds belonging to an insolvent person within four months of the time he is adjudged a bankrupt is, within the meaning of the bankruptcy act, dissolved and rendered null and void by the bankruptcy proceedings, notwithstanding the insolvent person made no reference in his schedule of assets to the fact that the indebtedness had been garnished.

This rule, so far as we have been able to ascertain, has been generally adopted or followed by the courts of the other states wherever the question has been presented to them. *D. C. Wise Coal Co. v. Columbia Lead & Zinc Co.*, 123 Mo. App. 249; *Armour Packing Co. v. Wynn*, 119 Ga. 683; *Wood v. Carr*, 115 Ky. 303; *Alexander v. Wilson*, 144 Cal. 5; and *Thompson v. Ragan*, 117 Ky. 577.

This question has also been many times before the federal courts. In *In re Beals*, 116 Fed. 530, it was said: "Under bankruptcy act 1898, sec. 67f, an adjudication in

bankruptcy, whether in voluntary or involuntary proceedings, renders void a judgment against a garnishee rendered in an action brought against the bankrupt within four months prior to the filing of the petition, and when he was insolvent, and discharges the garnishee from liability thereon, and such judgment must thereafter be treated as a nullity whenever drawn in question, whether directly or collaterally." In *In re Tune*, 115 Fed. 906, this question was presented, and it was said: "Whatever benefit results from the annulment of attachment liens extends to exempt property as well as to that which is not exempt. It is the policy of the law to allow the bankrupt, as well as creditors, to benefit by the changed status." The case of *Clarke v. Larremore*, 188 U. S. 486, was one which involved the construction of the provisions of the bankruptcy law in question in this case, and it was said by Mr. Justice Brewer: "As judgment, execution and levy were all within four months prior to the filing of the petition in bankruptcy, the lien created thereby became null and void on the adjudication of bankruptcy. This nullity and invalidity relate back to the time of the entry of the judgment and affect that and all subsequent proceedings. The language of the statute is not 'when' but 'in case he is adjudged a bankrupt,' and the lien obtained through these legal proceedings was by the adjudication rendered null and void from its inception."

From the foregoing authorities, it seems clear that the plaintiff's contention should be upheld.

In support of defendant's position, our attention is directed to the case of *Lockwood v. Exchange Bank*, 190 U. S. 294, which seems to be greatly relied on by counsel. We think the facts of that case clearly distinguish it from the one at bar. There it appeared that the creditor held a contract against the bankrupt entered into more than four months before the filing of his petition in bankruptcy by which he specially waived and renounced all his right to the homestead exemption allowed him by the laws of the state of Georgia or the United States; and that such con-

tracts or waivers were generally upheld and enforced by the courts of that state. Therefore the federal court declined to administer and distribute the exempt property as an asset of the bankrupt and withheld his discharge until a reasonable time should elapse to enable the creditors to assert, in the state court, their rights to subject the exempt property to the satisfaction of their claims under the waivers given as security therefor.

From an examination of the other cases cited by counsel for the defendant, it would seem that they are distinguishable from the case at bar, and afford us no substantial authority for a reversal of the judgment of the district court.

It is further contended that the courts of the state of Iowa may proceed to collect the judgments rendered by them against the defendant, and that by so doing it will be compelled to pay them. We are of opinion that those judgments cannot be enforced, and that it is not at all likely that either the courts or the judgment creditors will make any attempt to enforce their payment. The bankruptcy laws of congress enacted pursuant to the powers delegated to it by the federal constitution are binding upon the state as well as the federal courts; the state courts are bound to respect the rights acquired under them, and it is not to be believed that any of our state courts will attempt to override or nullify any of such laws. But, if any such attempt is made, the bankruptcy proceedings furnish a complete and adequate defense thereto.

For the foregoing reasons, the judgment of the district court is right, and it is therefore

AFFIRMED.