# LEHMAN, STERN & COMPANY, LIMITED, *v.* S. GUMBEL & COMPANY, LIMITED.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 146.   Argued January 22, 1915.—Decided February 23, 1915.

This court cannot entertain argument based on the theory that the decision of the highest court of the State is in conflict with the law of the State.

The ruling of the highest court of the State as to enforcement of a vendor's statutory lien is a matter of state law not reversible by this court.

Where the vendor attached within four months, alleging a vendor's lien under the state statute, and the state court holds that the proceedings under the vendor's lien failed for want of possession, the lien is simply that created by ordinary attachment and garnishment and is dissolved by the express provisions of § 67f of the Bankruptcy Act.

Where an inferior state court attempts to proceed under attachment based on a vendor's statutory lien filed within four months of the petition and the Supreme Court of the State holds there is no vendor's lien but only ordinary attachment, a peremptory writ of prohibition against the state court and relegating the parties to the Bankruptcy Court is the proper practice.

132 Louisiana, 231, affirmed.

THE facts, which involve the effect of bankruptcy proceedings on attachments in the state court, are stated in the opinion.

*Mr. Henry H. Chaffe,* with whom *Mr. George Denegre* and *Mr. Victor Leovy* were on the brief, for plaintiff in error:

Section 67 of the Bankruptcy Act is not directed at the writ of attachment itself, but only at the lien obtained thereby. *Austin* v. *O'Reilly,* 2 Wood, 670; *Henderson* v. *Mayer,* 225 U. S. 631.

A judgment or decree in enforcement of an otherwise valid preëxisting lien is not the judgment denounced by the statute, which is plainly confined to judgments creating liens. *Metcalf* v. *Barker,* 187 U. S. 175.

The name of the writ is of no concern, as Congress was dealing with liens obtained by judicial proceedings and not with the writs which might be employed to enforce valid preëxisting statutory liens by holding the property within the grasp of the state court. The court below erred in holding that because the seizure of the state court was constructive and not actual and physical, the adjudication in bankruptcy of the defendant divested the state court of jurisdiction to determine the validity, *vel non,* of plaintiff's lien on the cotton seized.

By garnishment process the property is placed in *custodia legis* and under the control of the court. And this is all that is necessary to maintain its jurisdiction. *Scholefield* v. *Bradlee,* 8 Martin, O. S., p. 510; *Dennistown* v.

*N. Y. Faucet Co.*, 12 La. Ann. 732; *Grief* v. *Betterson*, 18 La. Ann. 349; *Goslan* v. *Powell*, 38 La. Ann. 522; *Buddig* v. *Simpson*, 33 La. Ann. 375; *Gomilla* v. *Millikin*, 41 La. Ann. 123; *Lehman & Co.* v. *Rivers*, 110 Louisiana, 1079.

In order to give the court jurisdiction over property, it is not necessary that it be in the possession of one of its officers bearing the title of sheriff, constable, receiver or the like; it is merely necessary that the property be under its control and subject to its order. *Cooper* v. *Reynolds*, 10 Wall. 308, 317; *Metcalf* v. *Barker*, 187 U. S. 165; *Eyster* v. *Gaff*, 91 U. S. 521; *In re Seebold*, 105 Fed. Rep. 910; *Carling* v. *Seymore Lumber Co.*, 113 Fed. Rep. 490; *In re Kane*, 152 Fed. Rep. 587.

Until the position of garnishee with regard to the cotton seized in the hands of the railroad company, and that in their hands, if any was so caught by the writ of attachment, it cannot be said that the plaintiff's rights have been transferred to and will have to be asserted, in the United States courts, as it may very well be that the rights have never been transferred and could in no event be asserted there. The trustee is a party to these proceedings and can, therefore, fully protect the interests of the general creditors.

The state court does not lose all and every character of jurisdiction over the bankrupt's assets and property, no matter how or where situated. This court has on several occasions taken the opposite view. *Bardes* v. *Harwarden Bank*, 178 U. S. 524; *Eyster* v. *Gaff*, 91 U. S. 521; *Louisville Trust Co.* v. *Cominger*, 184 U. S. 18; *First National Bank of Chicago* v. *Chicago Title & Trust Co.*, 198 U. S. 280.

The lien sought to be enforced is one granted by the law of Louisiana; prior to the adjudication in bankruptcy the state court seized and took under its control the property on which the lien is asserted, and, there-

fore, its jurisdiction was not divested or the suit in any way affected by the adjudication in bankruptcy of the defendants, in so far as enforcing the statutory lien is concerned.

*Mr. Monte M. Lemann,* with whom *Mr. J. Blanc Monroe* was on the brief, for the defendant in error.

MR. JUSTICE LAMAR delivered the opinion of the court.

On March 12, 1912, Lehman, Stern & Company sold to Martin & Company, 392 bales of cotton for the sum of $19,238. The checks given in payment were not honored when presented to the bank, and, on the day after the sale, the Lehman Company brought suit in a state court to obtain a general judgment against Martin & Company and to foreclose the lien, given by the Louisiana statute, on agricultural products "to secure the payment of the purchase money for and during the space of five days only after the day of delivery; within which time the vendor shall be entitled to seize the same in whatsoever hands or place it may be found and his claim for the purchase money shall have preference over all others."

Writs of sequestration and of attachment issued requiring the sheriff to seize the cotton in whatsoever place it might be found, and to attach other property of Martin & Co. and the individual members thereof and hold the same subject to the further judgment and order of the court. The New Orleans Railway Company, Gumbel & Co., and the Hibernia Bank were served with summons of garnishment.

On March 19th the defendants, Martin & Co., were adjudged voluntary bankrupts. On the next day Thompson was appointed Receiver of the bankrupts' estate. Shortly afterwards the New Orleans Railway Company, garnishee, in the state suit, answered that it had in its

possession 83 bales of the cotton mentioned in the plead-ings—stating, however, that the cotton was claimed by Thompson, Receiver of Martin & Co., bankrupts, and that he had notified the Railroad Company not to surren-der the same.

By virtue of an order of the bankrupt court Thompson, Receiver, thereafter intervened in the suit pending in the state court. Calling attention to the fact that the attachment proceedings had been commenced within four months prior to the petition in bankruptcy, and averring that the action did not involve property within the possession of the court, the Receiver filed a motion "to dismiss the proceedings herein, relegating the parties to the proper court of bankruptcy to determine their con-flicting claims." Gumbel & Co., garnishees, also excepted to the jurisdiction of the court on the ground that Martin & Co. had been adjudicated bankrupts. Both of these motions were overruled by the judge presiding in the state court who held that the Bankruptcy Act did not dissolve the vendor's lien; nor did it prevent the court from enforc-ing that lien against the cotton which had been brought into the custody of the court by means of garnishments served before the bankruptcy proceedings were filed.

Thereupon Gumbel & Co. applied to the Supreme Court of Louisiana for a writ of Prohibition forbidding the Judge of the Civil District Court of the Parish of New Orleans from proceeding further in the cause. The petition set out the history of the litigation, and averred that although § 67f dissolved the attachment, the court below had re-tained jurisdiction; that the Receiver had given notice that he claimed title to any property of Martin & Co. in the hands of Gumbel & Co. and would proceed to enforce the same by proceedings in the bankrupt court. By rea-son of these facts, and to avoid conflicts of jurisdiction between the courts, Gumbel & Co. claimed to be entitled to the benefit of the writ of Prohibition forbidding the

judge of the Parish Court from proceeding further in the case as against them, garnishees, and claimants of the cotton under bills of lading issued by the Railway Co. A rule *nisi* issued and was served upon the judge of the Civil District Court. He answered and after argument the Supreme Court of Louisiana ordered that the peremptory writ be issued 'on the ground that as § 67f dissolved the attachment the state court had no jurisdiction to enforce the garnishment process under the writ of attachment for the purpose of subjecting the property to the vendor's lien claimed by the plaintiff.'

A petition for a rehearing having been granted, the court, one judge dissenting, held that unless the state court had possession of the *res* its jurisdiction was destroyed by the bankruptcy proceedings; and as the summons of garnishment did not operate to transfer the cotton from the possession of the garnishee into the possession of the court, there was no jurisdiction to foreclose the vendor's lien. It also held that the state court was without power to afford relief to the attaching creditors who would, therefore, be obliged to have their rights adjudicated in the bankrupt court.

The case having been brought here by writ of error, the plaintiffs cited Louisiana cases in support of the contention that, in their suit for the recovery of the purchase price of agricultural products, they were entitled to an attachment, not only to secure a fund out of which to satisfy a general judgment, but also as a means by which to bring the cotton into court so as to have the vendor's lien foreclosed. In the light of those cases the plaintiffs further insisted that the garnishment operated as a seizure of the cotton; and that while § 67f may have dissolved the lien created by the attachment it did not affect the lien given by statute on the cotton which the garnishment had brought into the legal possession, custody and control of the Civil District Court of the Parish of Orleans.

But this court cannot entertain an argument based on the theory that the decision of the Supreme Court of Louisiana was in conflict with the law of the State. Its opinion in this case is to be taken as conclusively establishing that, in Louisiana, the vendor's lien can only be enforced against property in the possession of the court and also that such possession was not acquired by means of the service of the summons of garnishment. ·

From this ruling,—on a matter of state law, not subject to review here—it follows that the proceedings in the Civil District Court to foreclose the vendor's lien failed for want of possession of the cotton. That then left the case an ordinary suit for purchase money against Martin & Company, in which an attachment had been levied, on property in the hands of the certain garnishees. But the lien thus created by attachment and garnishment was dissolved by the express provisions of § 67f of the Bankruptcy Act. The judgment granting the peremptory writ of prohibition and relegating the parties to the Bankruptcy Court is therefore

*Affirmed.*