Argued December 19, 1918, affirmed February 11, rehearing denied
April 1, 1919.

## FORD *v.* HENDERSON.

(178 Pac. 381; 179 Pac. 558.)

**Bankruptcy—Attachment Within Four Months of Bankruptcy—Validity.**

1. Where, eight days after crop was attached as property of defendant, defendant was adjudged a bankrupt, adjudication in bankruptcy, together with appointment of trustee operated, in view of Bankruptcy Act of 1898, Section 67f (U. S. Comp. Stats., § 9651), to annul as against trustee whatever interest plaintiff had acquired under attachment, and to vest trustee with title of defendant as of date the latter was adjudged bankrupt.

### ON PETITION FOR REHEARING.

**Bankruptcy—Annulment of Lien—Construction of Statute.**

2. Bankruptcy Act, Section 67f (U. S. Comp. Stats., § 9651), making all levies, judgments, attachments or other liens obtained through legal proceedings against an insolvent at any time within four months prior to the "filing of a petition in bankruptcy against him" null and void upon adjudication of insolvent's bankruptcy, *held* applicable to voluntary as well as involuntary bankruptcies, in view of Section 1 (U. S. Comp. Stats., § 9585).

**Bankruptcy—Attachment Creditor—Dissolution of Attachment.**

3. A lien created by attachment within four months of adjudication of attachment debtor's bankruptcy is dissolved upon the adjudication of bankruptcy, under Bankruptcy Act, Section 67f (U. S. Comp. Stats., § 9651), although attaching creditor can show that he is an attaching creditor in good faith and without notice of debtor's insolvency, notwithstanding Section 301, L. O. L.

[As to proceedings to dissolve attachment, see note in 123 Am. St. Rep. 1028.]

From Yamhill: HARRY H. BELT, Judge.

Department 1.

M. Ford commenced an action against F. B. Tompkins in a Justice's Court and caused a writ of attachment to be placed in the hands of E. U. Henderson as constable for service. Henderson executed the writ on September 7, 1916, by levying upon a crop of oats as the property of F. B. Tompkins. The constable caused the crop to be threshed and when

threshed the oats amounted to 552 sacks. After the oats had been threshed, and on September 21, 1916, J. D. Tompkins, claiming to be the owner of the oats, brought an action in replevin in the Circuit Court for the purpose of recovering the property from E. U. Henderson. Acting on the authority of an undertaking signed by J. D. Tompkins as principal and by S. L. Scroggin and B. H. Evans as sureties and given in compliance with Section 286, L. O. L., the sheriff took the oats and upon the failure of Henderson to give an undertaking within three days as permitted by Section 288, L. O. L., the sheriff delivered the oats to J. D. Tompkins. A trial of the action brought by J. D. Tompkins against E. U. Henderson resulted in a judgment to the effect that the oats be returned to Henderson or if not returned that Henderson recover from J. D. Tompkins the sum of $649.99, the value of the oats, together with costs and disbursements taxed at $45.50. On January 5, 1917, E. U. Henderson signed a writing acknowledging that the oats described in the judgment were all returned to him by J. D. Tompkins on November 18, 1916, except a few sacks, "and that the value of the missing sacks was paid to me in money by said plaintiff on said date and I hereby acknowledge full and complete satisfaction of all of said judgment except the costs of $45." This instrument was filed with the county clerk on January 6, 1917, and an entry was made in the judgment docket showing a satisfaction of all the judgment "except the $45.50 costs." On February 20, 1917, another entry was made showing the payment of $45.50 "which is in full satisfaction of this judgment."

F. B. Tompkins filed a voluntary petition in bankruptcy in the District Court of the United States for

the District of Oregon, and on September 15, 1916, was adjudged a bankrupt. The first meeting of the creditors of F. B. Tompkins was held on November 28, 1916, and at that time E. U. Henderson was selected as the trustee of the bankrupt estate. On November 29, 1916, F. B. Tompkins subscribed and swore to a supplemental schedule, which was filed on December 5, 1916, showing that when he filed his petition in bankruptcy he did not "consider" that he owned the oats, but that since that time the Circuit Court for Yamhill County had adjudged that he owned the oats. On February 2, 1917, E. U. Henderson, as trustee of the bankrupt estate, made a report showing that he had sold the oats and that the net proceeds amounted to $620.64. Afterwards the referee ordered $181.45, fees and expenses of administrators, to be paid out of this sum of $620.64, and also allowed the payment of a dividend of 15 per cent on the debts which had been proved and allowed.

On February 20, 1917, M. Ford commenced this suit against E. U. Henderson, J. D. Tompkins, S. L. Scroggin and B. H. Evans for the purpose of obtaining a decree canceling the satisfaction of the judgment awarded to Henderson in the action of replevin. The complaint in this suit is drawn upon the theory that the defendants conspired together and caused a pretended satisfaction of the judgment to be signed by Henderson for the purpose of releasing S. L. Scroggin and B. H. Evans from liability as sureties on the undertaking and for the further purpose of depriving Ford "of the benefits of said attachment and of said judgment and liability against said J. D. Tompkins and his said bondsmen." It is alleged in the complaint that "in truth and fact" the judgment "has never been paid or satisfied and that no sum whatever has

ever been paid or applied thereon whatsoever." In addition to asking for a cancellation of the satisfaction of the judgment, the plaintiff prays that he be given a decree against the defendants "for the sum of $650, and the further sum of $45.50, * * the amount of said judgment made and rendered" in the action of replevin.

A trial terminated in a decree dismissing the suit and the plaintiff appealed.        AFFIRMED.

For appellant there was a brief over the names of *Mr. Frank Holmes* and *Messrs. Heider & Mark,* with oral arguments by *Mr. Holmes* and *Mr. Otto Heider.*

For respondents there was a brief and an oral argument by *Mr. W. O. Sims.*

HARRIS, J.—J. D. Tompkins used or disposed of 62 of the 552 sacks of oats delivered to him by the sheriff and hence on November 18, 1916, Tompkins had only 490 sacks; but the evidence shows conclusively that on November 18, 1916, J. D. Tompkins returned the 490 sacks of oats to Henderson and paid the latter $62 for the 62 sacks which had been used. The record does not inform us as to the amount for which Ford was suing in the Justice's Court, but we may of course assume that the sum sued for did not exceed $250: Section 951, L. O. L. The value of the oats was fixed in the verdict returned by the jury in the action of replevin and it may therefore be assumed that the 490 sacks returned to Henderson and the $62 cash paid to him were more than enough to satisfy any judgment that might be rendered in the action in the Justice's Court. It is not necessary to determine whether J. D. Tompkins could have compelled Henderson to receive the 490 sacks and $62 for

the missing 62 sacks, for the record shows that J. D. Tompkins paid $62 and redelivered 490 sacks and Henderson received the money and oats in absolute good faith. In passing it is proper to say, too, that Henderson was not elected trustee until the creditors and referee, who were present at the first meeting of creditors held on November 28, 1916, were informed of the fact that Henderson, acting as constable, had held the oats in his possession for ten days, and the referee suggested that "it would be a fine thing for" Henderson to act because it would save expense in moving the oats.

It will be recalled that the constable levied on the crop of oats on September 7, 1916, and that eight days afterwards, on September 15th, F. B. Tompkins was adjudged a bankrupt. The Bankruptcy Act (Act July 1, 1898, Chap. 451, 30 Stat. 544) provides that all attachments or other liens obtained through legal proceedings at any time within four months prior to the filing of a petition in bankruptcy shall be deemed null and void in case the insolvent person is adjudged a bankrupt, and the property affected by the attachment is discharged and released from the same. It therefore follows that the adjudication in bankruptcy plus the appointment of the trustee operated to annul, as against the trustee, whatever interest Ford may have acquired under the writ of attachment and to vest Henderson as trustee with the title of F. B. Tompkins as of the date the latter was adjudged a bankrupt: Bankruptcy Act of 1898, § 67f (Comp. Stats., § 9651); 3 R. C. L. 291; 1 Loveland on Bankruptcy, §§ 368, 370.

The decree appealed from is affirmed.     AFFIRMED.

McBRIDE, C. J., and BENSON and BEAN, JJ., concur.

Rehearing denied April 1, 1919.

## ON PETITION FOR REHEARING.

(179 Pac. 558.)

In Banc.

HARRIS, J.—2. Section 67f of the Bankruptcy Act (Act July 1, 1898, Chap. 541, 30 Stat. 564, Comp. Stats., § 9651) reads as follows:

"That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid. And the court may order such conveyance as shall be necessary to carry the purposes of this section into effect: Provided, That nothing herein contained shall have the effect to destroy or impair the title obtained by such levy, judgment, attachment, or other lien, of a bona fide purchaser for value who shall have acquired the same without notice or reasonable cause for inquiry."

In his petition for a rehearing the plaintiff argues that the words "filing of a petition in bankruptcy against him" makes Section 67f applicable only to involuntary bankruptcies. There are three judicial decisions which give support to this contention of the plaintiff: *In re Delue* (D. C.), 91 Fed. 510; *In re Easley* (D. C.), 93 Fed. 419; *In re O'Connor* (D. C.) 95 Fed.

943.   Section 1 of the Bankruptcy Act (U. S. Comp. Stats., § 9585) expressly provides that:

"The words and phrases used in this act and in proceedings pursuant hereto shall, unless the same be inconsistent with the context, be construed as follows: (1) 'A person against whom a petition has been filed' shall include a person who has filed a voluntary petition."

One of the principal objects of the Bankruptcy Act is to place creditors upon an equal footing; but it is obvious that if Section 67f is made applicable only to involuntary bankruptcies it will have the effect of bringing about rather than preventing inequality among creditors. Reason and the literally overwhelming weight of authority make Section 67f applicable to both voluntary and involuntary bankruptcies: *Gabriel* v. *Tonner,* 138 Cal. 63 (70 Pac. 1021, 1022) ; *Longley* v. *McCann,* 90 Ark. 252, 255 (119 S. W. 268) ; *Stickney & Babcock Coal Co.* v. *Goodwin,* 95 Me. 246, 248 (49 Atl. 1039. 85 Am. St. Rep. 408) ; *Brown* v. *Case,* 180 Mass. 45, 47 (61 N. E. 279) ; *Cavanaugh* v. *Fenley,* 94 Minn. 505, 507 (103 N. W. 711, 110 Am. St. Rep. 382) ; *Hall* v. *Chicago, B. & Q. R. Co.,* 88 Neb. 20, 24 (128 N. W. 645) ; *Gardiner* v. *Ross,* 19 S. D. 497, 505 (104 N. W. 220) ; *Farrell* v. *Lockett,* 115 Tenn. 494, 498 (91 S. W. 209) ; *Wallace* v. *Camp,* 200 Pa. St. 220, 221 (49 Atl. 942) ; *Mencke* v. *Rosenberg,* 202 Pa. St. 131, 137 (51 Atl. 767, 90 Am. St. Rep. 618) ; *McKenney* v. *Cheney,* 118 Ga. 387 (45 S. E. 433) ; *Mohr* v. *Mattox,* 120 Ga. 962, 965 (48 S. E. 410) ; *In re Beals* (D. C.), 116 Fed. 530, 533 ; *In re McCartney* (D. C.), 109 Fed. 621 ; *In re Lesser* (D. C.), 100 Fed. 433, 437 ; *In re Rhoades* (D. C.), 98 Fed. 399, 400 ; *In re Vaughan* (D. C.), 97 Fed. 560 ; *In re Richards,* 96 Fed. 935, 941 (37 C. C. A. 634).

Our statute (Section 301, L. O. L.) provides that—

"From the date of the attachment, until it be discharged or the writ executed, the plaintiff, as against third persons, shall be deemed a purchaser in good faith and for a valuable consideration of the property, real or personal, attached, * * ."

3. Turning again to Section 67f of the Bankruptcy Act it will be noticed that this section contains a proviso to the effect that nothing contained in the section shall destroy or impair the title obtained by an attachment of a *bona fide* purchaser for value who shall have acquired such title without notice or reasonable cause for inquiry. The plaintiff argues that when Section 301, L. O. L., and Section 67f of the Bankruptcy Act are construed together they have the effect of preserving the lien of the creditor's attachment if the attaching creditor can show that "he was such attaching creditor in good faith and without notice of the debtor's insolvency." It must be remembered that Ford was only an attaching creditor; he was not a purchaser at a sale on execution; the property was attached, but not sold. The contention now made by Ford was squarely presented in the case of *In re Kaupisch Creamery Co.* (D. C.), 107 Fed. 93, and Judge BELLINGER there held that the state statute and the Bankruptcy Act—

"do not mean the same thing. The proviso in the act of congress has reference to the title of an innocent purchaser; the state act has reference to the priority of lien in favor of an attaching or judgment creditor. The state enactment does not purport to give an attaching creditor the character of a *bona fide* purchaser, —a thing involving an absurdity, and not possible. It gives him such priority of right as a *bona fide* purchaser acquires by his purchase. The proviso in the act of congress refuses to recognize such a priority where the lien is obtained on proceedings begun within the prescribed time. It protects the title of

the *bona fide* purchaser, but repudiates the lien of the attachment.''

The lien created by the attachment was dissolved by force of Section 67f of the Bankruptcy Act when F. B. Tompkins was adjudged a bankrupt: *Lehman, Stern & Co.* v. *S. Gumbel & Co.*, 236 U. S. 448, 454 (59 L. Ed. 666, 35 Sup. Ct. Rep. 307); *Goodnough Mercantile Co.* v. *Galloway*, 48 Or. 239, 249 (84 Pac. 1049).

The remainder of the petition is only a restatement of the argument which the plaintiff made in his brief submitted at the hearing.

The petition for a rehearing is denied.

AFFIRMED.     REHEARING DENIED.