**In re Shirley Jane DUNN (S.S. # 433–04–7904), Debtor.**

**Charles N. MALONE, Trustee, Plaintiff,**

**v.**

**FIDELITY NATIONAL BANK, Defendant.**

**Bankruptcy No. 84–00510.**

**Adv. No. 85–0025.**

United States Bankruptcy Court, M.D. Louisiana.

Aug. 22, 1985.

Charles N. Malone, Baton Rouge, for plaintiff.

John D. Brady and Gerard Archer, Baton Rouge, for defendant.

**REASONS FOR JUDGMENT**

WESLEY W. STEEN, Bankruptcy Judge.

### I. Jurisdiction of the Court

This is a proceeding arising under Title 11 U.S.C. The United States District Court for the Middle District of Louisiana has original jurisdiction pursuant to 28 U.S.C. § 1334(b). By Local Rule 29, under the authority of 28 U.S.C. § 157(a), the United States District Court for the Middle District of Louisiana referred all such cases to the Bankruptcy Judge for the district and ordered the Bankruptcy Judge to exercise all authority permitted by 28 U.S.C. § 157.

This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(F); pursuant to 28 U.S.C. § 157(b)(1), the Bankruptcy Judge for this district may hear and determine all core proceedings arising in a case under Title 11 referred under 28 U.S.C. § 157(a), and the

Bankruptcy Judge may enter appropriate orders and judgments.

No party has objected to the exercise of jurisdiction by the Bankruptcy Judge. No party has filed a motion for discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1) or pursuant to 11 U.S.C. § 305. No party filed a timely motion for mandatory abstention under 28 U.S.C. § 1334(c)(2). No party has filed a motion under 28 U.S.C. § 157(d) to withdraw all or part of the case or any proceeding thereunder, and the District Court has not done so on its own motion.

## II. Status of Proceeding

This adversary action is before the Court on Defendant's motion to dismiss for a failure to state a claim on which relief can be granted. However, Defendant also filed an answer that admits virtually all allegations of the petition except the amount of funds received pursuant to a garnishment of the Debtor's wages and except for the conclusion expressed in the petition that the funds received by the Defendant constituted a preferential transfer voidable under 11 U.S.C. § 547.[1] In addition, the Court understands from the memoranda filed by counsel that the facts found by the Court below are stipulated except as indicated herein. Given the status of the pleadings, the Court will treat the Rule 12(b)(6) motion as a motion for partial summary judgment; the Court will set the remaining issue for trial. The facts that the Court understands to be stipulated are as follows:

(1) The Defendant is Fidelity National Bank of Baton Rouge (hereinafter "Fidelity"). Fidelity is a creditor of the Debtor.

(2) Prior to the Preferential Transfer Period,[2] Fidelity obtained a judgment against the Debtor and obtained a garnishment on that judgment pursuant to Louisiana law.

(3) By virtue of its garnishment, Fidelity received non-exempt wages of the Debtor; some of these wages were earned prior to the Preferential Transfer Period and some were earned within the Preferential Transfer Period.

(4) The Debtor was insolvent during the Preferential Transfer Period. This finding results from the § 547(f) presumption that the Defendant does not rebut.

(5) Funds received by Fidelity were received on account of an antecedent debt and allowed Fidelity to recover more than it would receive in a Chapter 7 liquidation.

(6) The amount of wages received by Fidelity under this garnishment proceeding was between $200 and $438.

The parties have asked the Court to decide the legal issue of whether funds received under a Louisiana garnishment judgment during the 90 days prior to the filing of a bankruptcy case are "transferred" during the Preferential Transfer Period if the garnishment judgment was issued prior to the Preferential Transfer Period.

## III. Conclusions of Law

The Louisiana Wage Garnishment statute[3] allows a creditor to seize a Debtor's nonexempt wages. It is clear, however, that the Debtor retains some ownership interest in those wages that are seized. For example, the seizure is only effective until the judgment is paid;[4] thus, if the judgment is satisfied by collection from a co-obligor, seizure of other property, or discharge of the debt in bankruptcy, then the seizure terminates and the debtor regains full rights to his earnings. In addition, the debtor retains enough ownership interest in the earned wages so that certain

---

1. Unless otherwise indicated, all subsequent statutory references and section numbers refer to the Bankruptcy Code, title 11, U.S.C.

2. The term "Preferential Transfer Period" in this opinion refers to the 90 days before the date of filing of the petition in a bankruptcy case; it is during this 90-day period that preferential trans-

fers can be invalidated by the trustee under § 547(b)(2).

3. La.R.S. 13:3921, *et seq.*

4. La.R.S. 13:3923.

support obligations are to be satisfied from the wages, notwithstanding the garnishment; the statute specifically provides that child support and certain parental support obligations are satisfied first, regardless of the dates of the respective judgments and seizures.[5] In short, until the wages are actually earned, it is not possible to determine whether the creditor is entitled to them on account of his garnishment or whether the debtor is entitled to the wages on account of the elimination of the garnishment (such as by satisfaction of the judgment) or on account of another obligation that primes the interest of the garnisher. Therefore, it is clear that under Louisiana law the garnishment constitutes a privilege or lien rather than a transfer of ownership interest.[6] This determination appears to be significant in the Circuit Court cases discussed below.

The Circuit Court cases determine the issues involved in this case by determining when a transfer took place. Section 101(48) provides that "... 'transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property ..." Clearly, then, within the Preferential Transfer Period there was a transfer because the Debtor involuntarily disposed of an interest in property; the creditor's lien interest became absolute ownership when part of the Debtor's wages were paid to the Sheriff, then to the creditor.

The conclusion is supported by the analysis in *Durrett v. Washington National Insurance Co.*, 621 F.2d 201 (5th Cir., 1980), *Abramson v. Lakewood Bank*, 647 F.2d 547 (5th Cir., 1981), *In re Hulm*, 738 F.2d 323 (8th Cir., 1984): *Contra: In re Madrid*, 725 F.2d 1197 (9th Cir., 1984). The Fifth and Eighth Circuits' decisions hold that a transfer is effected when a lien interest converts to an ownership interest, not when the lien is created.

But this result regarding garnishment of wages should obtain in bankruptcy cases regardless of state law. Although a garnishment may be effected prior to the Preferential Transfer Period, the transfer does not occur until the wages are earned. Section 547(e)(3) provides: "For purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred." Although the statutory authority is clear, there has been a split of authority with respect to this issue. In particular, *In re Riddervold*, 647 F.2d 342 (2d Cir., 1981), *In re Conner*, 733 F.2d 1560 (11th Cir., 1984), and *In re Coppie*, 728 F.2d 951 (7th Cir., 1984) *cert. denied sub nom., Gouveia v. Hammond Clinic*, — U.S. —, 105 S.Ct. 777, 83 L.Ed.2d 772 (1985) have held that there is no preferential transfer recoverable by the trustee under § 547(b) in circumstances like the case at bar. With due respect, those cases are incorrect because they either ignore or misinterpret § 547(e)(3).

The first case by a circuit court on this issue was decided on a "continuing levy" theory that derives from *In re Sims*, 176 F. 645 (S.D.N.Y., 1910), obviously a Bankruptcy Act case. The Second Circuit, *In re Riddervold*, in 1981 noted what it perceived to be a lack of authority on the point and, therefore, looked back to the pre-Code cases to hold that "[S]ervice of the income execution on the employer in effect works a novation whereby the employer in effect owes 10% of the employee's salary not to the employee but to the sheriff for the benefit of the judgment creditor." Therefore, subsequent to such service, the debtor has "no property or interest in property subject to the levy which can be transfer-

---

5. La.R.S. 13:3928.

6. Other factors supporting the conclusion that the debtor retains an interest in the wages earned include the requirement that the debtor pay income taxes on the funds subject to garnishment, the fact that the employee's right to minimum wage is considered satisfied in part by the amount subject to garnishment, and that the employee's fringe benefits are computed upon his total salary, including the funds subject to garnishment. *See also Lehman, Stern & Company v. S. Gumbel & Company*, 236 U.S. 448, 35 S.Ct. 307, 59 L.Ed. 666 (1915).

red."[7]   Therefore, the Court reasoned, there was no "transfer of property of the debtor" within the Preferential Transfer Period. The *Riddervold* court did not discuss § 547(e)(3).

The Eleventh Circuit reached the same result, but without adopting the "continuing levy" theory and without citing *Riddervold*. *In re Conner* holds that a garnishment is a transfer that is effective when, under state law, a simple contract creditor cannot acquire a superior judicial lien. The *Conner* court also failed to discuss § 547(e)(3).

Because the *Riddervold* and *Conner* opinions both ignore § 547(e)(3), it is appropriate to discuss them together before turning to the *Coppie* opinion that does discuss § 547(e)(3).

The Second Circuit opinion in *Riddervold* states that upon service of the seizure the debtor suffered an involuntary alienation of his interest in 10% of his wages; this assumes that the transfer was effective, under bankruptcy law, upon such service. No federal statutory authority is cited for the proposition; the court cites only New York statutes, and then applies the *In re Sims* "continuing levy" theory. The trouble with that analysis is twofold: first, federal law, not state law, governs the effective date of transfer when considering preferential transfers (§ 547(e)); second, the federal law that the Second Circuit considered was 71 years old; § 547(e)(3) was enacted only three years prior to *Riddervold*.

The Eleventh Circuit decision recognizes that federal law governs and recognizes that the Bankruptcy Code (§ 547(e)) defines the date that a transfer is effected, but the *Conner* opinion for some reason only considers two-thirds of § 547(e). The reason probably lies in the statute itself, which is terribly difficult to read. To do so, one should begin with § 547(e)(2) to determine

when a transfer is made; then, one should look at § 547(e)(1) to define "perfection of a transfer"; then one should look to § 547(e)(3) for an exception to § 547(e)(2). Putting all of this together, one should conclude that a transfer takes place for bankruptcy purposes on the later of four dates:

(1) The date when it is executed by and effective between the transferor and transferee if it is perfected within 10 days;

(2) If not perfected within 10 days, then the date when it is perfected; *but*

(3) If not perfected prior to the petition or within 10 days of execution, then the date immediately before the filing of the petition; *but*

(4) *In no case* is the transfer effective "… until the debtor has acquired rights in the property transferred."[8]

Part of the confusion in the statute results from the operative order being different from the order of presentation. The *Conner* opinion considers § 547(e)(1) and (2) but ignores § 547(e)(3).

*In re Coppie* at least recognizes § 547(e)(3), but holds that it does not apply because the legislative history indicates that "[t]his section was enacted to overrule this court's decision in *Grain Merchants of Indiana, Inc. v. Union Bank and Savings Co.*, 408 F.2d 209 (7th Cir., 1969). Sen.Rep. No. 95–989, 95th Cong., 2d Sess. 89 (1978)."[9]   The *Coppie* decision gives no reason why this legislative history supports a conclusion that subsection (e)(3) does not apply to wages earned subsequent to garnishment. Presumably, the opinion concludes that express Congressional intent of overruling a decision affecting accounts receivable limits the application of the statute to that type of property. There is no authority in the statute for such an interpretation. To the contrary, § 547(e)(3) is more logical and coherent when the rule applies

---

7.   647 F.2d 342, 346.

8.   Section 547(e)(3). The "but in no case" exception results from the "except as provided in paragraph (3)" language of § 547(e)(2).

9.   728 F.2d 951, 953.

to all types of property rights, not just accounts receivable.

While the circuit courts that have considered the issue appear to hold that there is no recoverable preferential transfer involved in the case at bar, the bankruptcy courts are of a different mind: *In re Perry*, 48 B.R. 591 (Bkrtcy., M.D.Tenn., 1985); *In re Smith*, 45 B.R. 100 (Bkrtcy, E.D.Va., 1984); *In re Roberts*, 44 B.R. 752 (Bkrtcy., N.D.Ga., 1984); *In re Morton*, 44 B.R. 750 (Bkrtcy., N.D.Ga., 1984); *In re Tressler*, 41 B.R. 779 (Bkrtcy., D.Del., 1984); *In re Tabita*, 38 B.R. 511 (Bkrtcy., E.D.Pa., 1984); *In re Straight*, 35 B.R. 445 (Bkrtcy., D.Or., 1983); *In re Barnes*, 29 B.R. 677 (Bkrtcy., W.D.Va., 1983); *In re Button*, 29 B.R. 118 (Bkrtcy., E.D.Tenn., 1983); *In re Fagan*, 26 B.R. 212 (Bkrtcy., W.D.Ky., 1982); *In re Larson*, 21 B.R. 264 (Bkrtcy., D.Utah, 1982); *In re Cobb*, 17 B.R. 687 (Bkrtcy., E.D.Tenn.1982); *In re Cox*, 10 B.R. 268 (Bkrtcy., D.Md., 1981). *In re Mayo*, 19 B.R. 630 (Bkrtcy., E.D.Va., 1981). The error of the circuit cases is well explained by Judge Lundin: *In re Perry, supra;* his analysis is a very scholarly explanation.[10] But a very short explanation is simply that those cases simply fail properly to apply § 547(e)(3). When a statute is amended and the amendment is clear, there is no reason to cling to previous statutory interpretation.

## IV. Application of Conclusions of Law to Facts

Accordingly, the Court determines that wages received by Fidelity under a garnishment effected prior to the Preferential Transfer Period are nevertheless preferential transfers to the extent that the wages were earned during the Preferential Transfer Period. A pretrial conference is set for the 5th day of December, 1985, at 2:00 p.m. Communication from counsel indicates that on or prior to that date the parties can enter into a stipulated judgment or can stipulate to the amount of wages that constitute a preferential transfer as determined herein; in either event, the Court can enter a judgment without holding the pretrial conference upon submission of the stipulation. If not, a pretrial order will issue to govern trial, which will be limited to a determination of the amount of wages earned and paid over under garnishment during the Preferential Transfer Period.

## V. Limited Future Application

The instant case, 84–00510, was filed on July 18, 1984. Section 547(c)(7), enacted by the Bankruptcy Amendments and Federal Judgeship Act of 1984, does not apply, since that amendment applies only to cases filed on or after October 8, 1984. This opinion is expected to have limited future application because of the referenced

---

**10.** In addition to the reasons cited by Judge Lundin, the error in the circuit court opinions can be demonstrated by the following example. If the "absolute assignment upon service of garnishment" theory of *In re Riddervold, supra,* were correct, then a certain percentage (*i.e.,* the exempt portion) of the debtor's wages would have been assigned prior to the Preferential Transfer Period (and, obviously, prior to the commencement of the case). The garnished wages would then not become property of the estate because the transfer of ownership interest would have occurred prior to these events. (*See* § 541, and compare with *Riddervold* theory that "service of the income execution works a novation ..." *supra.*) Arguably, then, a discharge would not affect the garnishment: Section 524 provides that a discharge voids any judgment "to the extent that such judgment is a determination of the personal liability of the debtor." If the garnishment had accomplished an *in rem*

transfer of ownership to a portion of the Debtor's wages, § 524(a)(1) would not apply since the creditor would not be enforcing the judgment as a determination of the personal liability of the Debtor; the creditor would simply be collecting his interest in property transferred to him prior to the Preferential Transfer Period. Section 524(a)(2) would not prohibit continuance of the garnishment because under the *Riddervold* theory since, again, the creditor would not be seeking the enforcement of a personal liability, but would merely be collecting an income stream assigned to him prior to filing. This conclusion is especially logical after the Bankruptcy Amendments and Federal Judgeship Act of 1984 because that statute eliminated the term "or from property of the debtor" from § 524(a)(2). While the *Riddervold* case did not involve the effect of a discharge on a garnishment, the rationale of the case would seem to require this result.

amendment, *see In re Holyfield,* 13 BCD 214, 50 B.R. 695 (Bkrtcy., D.Md., 1985).