**In re MOMENTUM COMPUTER SYSTEMS INTERNATIONAL, Debtor.**

**MOMENTUM COMPUTER SYSTEMS INTERNATIONAL,**
**Appellee/Plaintiff,**

v.

**CORTANI.BROWN.RIGOLI,**
**Appellant/Defendant.**

**No. C 86–4367 SC.**
**Bankruptcy No. 585–00602–M.**
**Adv. No. 850479.**

United States District Court,
N.D. California.

Oct. 28, 1986.

James R. Hagan, Palo Alto, Cal., for appellee/plaintiff.

Ream, Train & Roskoph, Palo Alto, Cal., for appellant/defendant.

ORDER RE FINDING OF VOIDABLE PREFERENCE

CONTI, District Judge.

Momentum Computer Systems International filed a Chapter 11 petition on March 4, 1985. In February 1985, Sytek, Inc. paid $7,923.09 to the Sheriff of Santa Clara County, for the benefit of Cortani.Brown. Rigoli. The Bankruptcy Judge found that this payment was a voidable preference under section 547 of the Bankruptcy Code. The matter is before the court on appeal from this ruling.

Cortani.Brown.Rigoli ("CBR") performed public relations services for Momentum Computer Systems International ("Momentum"). Momentum failed to pay CBR the full amount due, and CBR obtained a judgment against Momentum for $31,013.89. Sytek, Inc. was a customer of Momentum, and so it sometimes owed money to Momentum.

On July 6, 1984, the Superior Court of Santa Clara County issued a writ of execution on CBR's judgment. CBR served notices of levy on Sytek on July 10, 1984, and on November 29, 1984. Momentum made a sale to Sytek and delivered goods on February 1, 1985. Instead of paying Momentum, Sytek paid $7,337.59 to the Sheriff of Santa Clara County on February 13, 1985. Momentum also delivered a smaller shipment of goods to Sytek on January 7, 1985. Instead of paying Momentum, Sytek paid $585.50 to the Sheriff on February 8, 1985. Sytek made these payments to the Sheriff for the benefit of CBR, as the notice of levy directed. The Sheriff paid these amounts, $7,923.09, to CBR on March 15, 1985.

Section 547 of the Bankruptcy Code governs voidable preferences. The trustee in bankruptcy may avoid certain transfers of property of the debtor made within the ninety day period before filing. 11 U.S.C. § 547. Momentum filed its bankruptcy petition on March 4, 1985. Ninety days before filing was December 4, 1984. Sytek paid $7,923.09 to the Sheriff within the ninety day period. Momentum sued CBR to recover this payment. The Bankruptcy Judge found that Sytek's payment to the Sheriff was a voidable preference. This court reverses.

### THE FUNDS WERE NOT PROPERTY OF THE DEBTOR

CBR served Sytek with a notice of levy on November 29, 1984. The notice of levy gave Sytek duties under California Code of Civil Procedure § 701.010.

*§ 701.010. Duties of third persons ...*

(a) Except as otherwise provided by statute, when a levy is made by service of a copy of the writ of execution and a notice of levy on a third person, the third person at the time of levy or promptly thereafter shall comply with this section.

(b) Unless the third person has good cause for failure or refusal to do so:

.     .     .     .     .

(2) ... the third person shall pay to the levying officer both of the following:

(A) The amount of the obligation levied upon that is due and payable to the judgment debtor at the time of levy.

(B) Amounts that become due and payable to the judgment debtor on the obligation levied upon during the period of the execution lien.

California Code of Civil Procedure § 701.-010. The notice of levy obligated Sytek to pay to the Sheriff both amounts due and payable at the time of levy *and* amounts that would become due and payable thereafter. Thus CBR possessed a continuing lien. As obligations to Momentum accrued, the statute required Sytek to make continuing payments for the benefit of CBR. If Sytek had paid Momentum instead—or if Sytek had failed to pay the Sheriff for any other reason—CBR could have sued Sytek for these amounts. California Code of Civil Procedure § 701.020.

CBR argues as follows: "Due to the pre-existing execution lien ... any amounts that became due to Debtor from Sytek, up to the level of the execution lien, already belonged to CBR and never vested, even for a moment, in Debtor's possession and never were 'property of the debtor' under Bankruptcy Code § 547(b)." Opening Brief of Appellant CBR, p. 7.

Momentum argues that these amounts *were* property of the debtor. The Sheriff could only take the money from Sytek, it argues, because Momentum had a right to receive the money. Thus the money must have been property of the debtor.

Judge Friendly addressed the present question in *In re Riddervold,* 647 F.2d 342 (2d Cir.1981). In *Riddervold,* the debtor owed money to a hospital. The hospital won a judgment. The hospital served an

execution on the employer, garnishing a portion of the debtor's wages. The employer paid this portion to the hospital, as directed. The debtor then filed for bankruptcy. The hospital had served the execution before the preferential transfer period. The employer had made payments to the hospital within the preferential transfer period. The debtor argued that payment to the hospital was a voidable preference. In order to rule on this claim, the court had to determine whether the garnished wages were "property of the debtor" under section 547(b).

As *Riddervold* noted, there are two ways to approach the issue. On the first view, one might argue that the notice of execution created a continuing levy. Under this theory, the employer was obligated to pay the judgment creditor as soon as salary accrued. Thus the salary never become the property of the debtor, even for "a fleeting second." 647 F.2d at 346. On the alternative view, one might argue that the employer's duty to pay the judgment creditor did not arise until the debtor had earned his salary. Thus the salary first became the property of the debtor, "for a fleeting second," and then became the property of the judgment creditor.

*Riddervold* adopted the continuing levy theory. Under New York law, it noted, the judgment creditor could sue to recover the garnished amounts from the employer. "Service of the income execution on the employer in effect works a novation whereby the employer owes 10% of the employee's salary not to the employee but to the sheriff for the benefit of the judgment creditor." *Riddervold*, 647 F.2d at 346. The Seventh Circuit has also adopted this view. *Matter of Coppie*, 728 F.2d 951 (7th Cir.1984). Many bankruptcy courts, however, have adopted the alternative view. *See, e.g., In re Dunn*, 56 B.R. 275 (Bankr. M.D.La.1985), *In re Perry*, 48 B.R. 591 (Bankr.M.D.Tenn.1985), and *In re Tabita*, 38 B.R. 511 (Bankr.E.D.Pa.1984). These cases reject *Riddervold*.

Under the continuing levy theory, in this case, Sytek was obligated to pay CBR as soon as Sytek incurred its debt to Momentum. By operation of California Code of Civil Procedure § 701.010, the funds automatically became the property of CBR. The funds were never the property of Momentum. Under the alternative theory, Sytek's duty to pay CBR did not arise until Momentum delivered goods to Sytek. Thus the funds first became the property of Momentum, and then became the property of CBR.

■ This court adopts the continuing levy theory, following *Riddervold*. California law required Sytek to pay the funds to the Sheriff for the benefit of CBR. CBR had a statutory right to sue Sytek if Sytek failed to do so. Therefore the funds were not the property of Momentum.

Two factors explain why *Dunn, Perry*, and other cases have adopted the alternative view. First, these cases interpret the law of other states. *Dunn* found that under Louisiana law "the Debtor retains some ownership interest" in the subject property. 56 B.R. at 276. Likewise, *Perry* found that under Tennessee law, the employee retained a property interest in all of his wages even after garnishment. These cases do not affect the result under California law. Second, these cases adopt an expansive reading of Bankruptcy Code section 547(e)(3). This court finds that section 547(e)(3) does not have such a broad effect. (See below.)

## TRANSFER TOOK PLACE BEFORE THE PREFERENCE PERIOD

The Bankruptcy Code defines "transfer" as follows:

"transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest.

11 U.S.C. § 101(40). When CBR served notice of levy on Sytek, this constituted a "transfer" under the Code's definition.

■ Within section 547 of the Bankruptcy Code, subsections (e)(1)–(3) govern the

timing of transfer. The relevant portions provide as follows:

(e)(1) For the purposes of this section—

. . . . .

(B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—

. . . . .

(B) at the time such transfer is perfected. . . .

(3) For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

11 U.S.C. § 547(e). The court now applies these provisions to determine whether there has been a voidable preference.

First, a transfer took place when CBR served notice of levy on Sytek. Under subsection (e)(1), this transfer was perfected when a creditor could not acquire a superior lien. State law determines when a creditor could not acquire a superior lien. *See In re Madrid,* 725 F.2d 1197, 1200 (9th Cir.1984). The Sheriff served on Sytek a notice of levy, pursuant to California Code of Civil Procedure, § 700.170(a). CBR then held an execution lien. This execution lien had priority over any other judgment liens that might be applied later. California Code of Civil Procedure, § 697.600. Thus transfer to CBR was perfected.

Second, under subsection (e)(2), the transfer was made when perfected. The transfer took place in November 1984, well before the preference period. *Accord, In re Connor,* 733 F.2d 1560 (11th Cir.1984).

Third, under subsection (e)(3), the transfer was not made until Momentum acquired rights in the property—*if* Momentum ever *did* acquire rights in the property. If Momentum *never* did acquire rights in the property, then the third subsection does not come into play.

Momentum relies on subsection (e)(3). Subsection (e)(3) provides that no transfer has occured *until* the debtor has acquired rights in the property. Momentum reasons that the court must therefore reject the continuing levy theory. The court determines that subsection (e)(3) does not have such a broad effect.

Subsection (e)(3) did not exist prior to 1978. Several courts have stated that Congress intended subsection (e)(3) to address the after-acquired clause of a security interest. *Matter of Coppie,* 728 F.2d 951, 953 (7th Cir.1984); *In the Matter of E.P. Hayes, Inc.,* 29 B.R. 907 (Bankr.Conn.1983). *But see In re Dunn,* 56 B.R. 275 (Bankr.M.D.La.1985). Many security instruments grant a lien on collateral the debtor acquires after the instrument has been executed. When the debtor acquires possession of new collateral, the creditor's security interest automatically extends to the new collateral. Subsection (e)(3) provides that the transfer takes place when the debtor acquires the collateral, not when the security instrument is executed. The present situation is different, because Momentum never acquired the property. Thus the court determines that subsection (e)(3) does not apply to the present case.

*In re Dunn,* 56 B.R. 275 (Bankr.M.D.La. 1985), and other bankruptcy court cases reject the thesis of *Coppie.* These courts have stated that Congress did not intend to limit the effect of subsection (e)(3). These courts note that the phrase "property of the estate" is broadly defined in section 541(a)(1). *See United States v. Whiting Pools,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Therefore, they argue, the phrase "property of the debtor" in section 547 should have a broad interpretation as well. This argument fails, because section 541 contains a broad definition clause, while section 547 does not. Moreover, *Whiting Pools* does not compel a finding for the debtor here. "Of course, if a tax levy or seizure transfers to the IRS *ownership* of the property seized, § 542(a) may not apply." *Whiting Pools,* 462 U.S. at 209, 103 S.Ct. at 2316 (emphasis added). In

any case, this court finds that subsection (e)(3) does not require the court to reject the continuing levy theory.

## NINTH CIRCUIT AUTHORITY

The Ninth Circuit has not ruled on this question under the new Bankruptcy Code. Other decisions imply that the Ninth Circuit would reach this court's result.

In *Evans v. Valley West Shopping Center, Inc.*, 567 F.2d 358 (9th Cir.1978), the Ninth Circuit faced a similar question under the former Bankruptcy Act. In *Evans*, a shopping center leased space to a store. Once the store began occupancy, under Arizona law, the lease gave the landlord a perfected lien. The lien attached before the preference period. The store failed to pay its rent. The landlord obtained a judgment. The store paid the judgment. Shortly thereafter, the store filed for bankruptcy. *Evans* held that payment of the judgment was not a voidable preference. It stated: "the payment did not constitute the transfer. Rather, the attachment of the landlord's lien constituted the transfer." 567 F.2d at 360.

*Evans* does not directly govern the present case, because Congress has since added subsection 547(e)(3). The Seventh Circuit reached the same result as *Evans* in a case under the new Bankruptcy Code. *In re Coppie*, 728 F.2d 951, 953 (7th Cir. 1984). The Seventh Circuit ruled that subsection 547(e)(3) does not apply.

The Ninth Circuit considered an analogous situation in *In re Madrid*, 725 F.2d 1197 (9th Cir.1984). This case concerned fraudulent conveyances under § 548 of the new Bankruptcy Code. Section 548 of the Bankruptcy Code permits a trustee to avoid a fraudulent transfer made within one year before the date of filing. Section 548 partly parallels section 547. Like subsections 547(e)(1)–(2), subsection 548(d)(1) provides that a transfer is made when a third party cannot acquire a superior interest. Section 548 does not have a provision paralleling subsection 547(e)(3).

In *Madrid*, the debtor-in-possession sought to avoid the foreclosure sale of her house. The creditor perfected its security interest before the one year period. The creditor sold the house at a foreclosure sale within the one year period. Ninth Circuit held that the foreclosure sale was not voidable. The foreclosure sale did not constitute the transfer; rather, the transfer took place when the creditor perfected its security interest under Nevada law. *Madrid*, 725 F.2d at 1200.

*Madrid*'s footnote two approves three cases decided under section 547 of the former Bankruptcy Act.

> The principle running throughout those cases is that enforcement of a valid lien within four months of bankruptcy petition filing cannot be struck down as a preferential transfer where the lien was perfected outside the four-month reach back period. No matter what enforcement mechanism was employed, transfer for purposes of the preferential transfer section occurred at time of perfection of the lien, and not at time of enforcement.

*Madrid*, 725 F.2d at 1201, n. 2. These cases were decided before Congress added subsection 547(e)(3) to the Code. Since *Madrid* cites these cases with approval, footnote 2 implies the view that subsection (e)(3) does not change their result.

*Madrid* held that Congress did not intend to prevent a secured creditor from enforcing a lien, when the lien had been perfected before the transfer period. Similarly, this court concludes that Congress did not intend to prevent a judgment creditor from enforcing an execution of judgment, when the creditor had served notice of levy before the transfer period. Bankruptcy law should alter as little as possible the legal relationships that exist apart from bankruptcy. *In re Madrid*, 725 F.2d 1197, 1203 (9th Cir.1984). Absent bankruptcy law, the funds at issue would never be property of Momentum. California law made the funds property of CBR. In this bankruptcy proceeding, the result should be the same.

In accordance with the foregoing, it is hereby ordered that:

(1) the finding of the Bankruptcy Judge is reversed. Sytek's payment of $7,923.09 to the Sheriff for the benefit of CBR was not a voidable preference under section 547 of the Bankruptcy Code.