**In re Bobby Joe TAYLOR and Annie Faye Taylor.**

**Bobby Joe TAYLOR, and wife, Annie Faye Taylor, Plaintiffs,**

v.

**MISSISSIPPI LEARNING INSTITUTE, Mid–South Neurologist and South Central Bell, Defendants.**

**MISSISSIPPI GUARANTY STUDENT LOAN AGENCY, Counter–Claimant,**

v.

**BEVERLY CALIFORNIA CORPORATION, Counter–Defendant.**

**Bankruptcy No. 91–44017.
Adv. No. 92–4071.**

United States Bankruptcy Court, N.D. Mississippi.

Feb. 22, 1993.

B. Brennan Horan, Horan and Horan, Horn Lake, MS, for Bobby Joe Taylor and Annie Faye Taylor.

Albert D. Malone, Brantley and Malone, Jackson, MS, for Mississippi Guaranty Student Loan Agency.

Stephen H. Leech, Jr., Sylvie Robinson, Phelps Dunbar, Jackson, MS, for Beverly California Corp.

Harold J. Barkley, Jr., Jackson, MS, for Locke D. Barkley, Chapter 13 Trustee.

**OPINION**

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is a complaint filed by the debtors, Bobby Joe Taylor and wife, Annie Faye Taylor, against the defendants, Mississippi Learning Institute, Mid–South Neurologist, and South Central Bell; answer to said complaint filed by Mississippi Guaranty Student Loan Agency, hereinafter MGSLA, in the place of Mississippi Learning Institute; a counterclaim filed by MGSLA against Beverly California Corporation; answer to said counterclaim filed by Beverly California Corporation; a response seeking affirmative relief filed by Locke D. Barkley, Chapter 13 trustee; all issues having been appropriately joined; and the court having heard and considered same, hereby finds as follows, to-wit:

**I.**

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(E) and (F).

**II.**

As to the defendant, South Central Bell, an agreed order was entered dismissing said defendant from this adversary proceeding.

As to the defendant, Mid–South Neurologist, no service of process was effectively obtained. As such, the said defendant will not be considered as a party to this proceeding.

**III.**

On December 17, 1992, an agreed order was entered by the court reflecting that the parties had stipulated to all of the pertinent factual circumstances, as well as, that the court would decide this proceeding based on said stipulation and the memoranda of law submitted by the parties. The court concurred that there were no material factual issues in dispute, and that the resolution of this proceeding depended ex-

clusively on an interpretation of a contested issue of law.

## IV.

### FACTUAL BACKGROUND

The debtor, Annie Faye Taylor, executed a promissory note on October 6, 1983, in the original principal sum of $2,500.00, minus prepayment fees of $47.91 and $125.00, for a net amount of $2,327.09. The loan was an educational loan guaranteed by MGSLA.

The debtor subsequently defaulted in the repayment of the loan and a consent judgment in favor of MGSLA was entered on January 28, 1991, in the County Court for the First Judicial District of Hinds County, Mississippi. On July 2, 1991, a writ of garnishment was issued and served on Beverly California Corporation, Annie Faye Taylor's employer, along with an order of the county court requiring monthly payments on the garnishment.

Beverly California thereafter withheld the following sums from the debtor's salary:

| | | |
|---|---|---|
| 1. | Before the 90 day preference period | $ 692.10 |
| 2. | Within the 90 day preference period | 1,203.49 |
| 3. | After the bankruptcy filing | 844.59 |
| | Total | $2,740.18 |

On December 26, 1991, Beverly California paid MGSLA the sum of $2,302.76, and on January 27, 1992, the sum of $437.42. No additional funds were withheld because Beverly California was advised that the debtors had filed bankruptcy on December 4, 1991. MGSLA currently holds all of the garnished funds in the sum of $2,740.18.

## V.

### SUMMARY OF THE PLEADINGS

The debtors seek to recover the wages that were garnished both prepetition and post-petition as a result of the consent judgment enrolled in favor of MGSLA. They allege that the garnishment of the prepetition wages is a series of preferential transfers avoidable pursuant to 11 U.S.C. § 547(b), and that the garnishment of the post-petition wages violated the automatic stay provisions set forth in 11 U.S.C. § 362(a).

MGSLA concedes that the wages that were garnished post-petition should become a part of the debtors' bankruptcy estate. However, MGSLA contends that the writ of garnishment was issued and served on the garnishee, Beverly California, prior to the commencement of the 90 day preference period, i.e., the 90 day period immediately before the debtors filed their bankruptcy case. As such, MGSLA asserts that the garnishment of the prepetition wages cannot be avoided and the withheld wages recovered as preferential transfers.

The counterclaim filed by MGSLA against Beverly California sought to recover the withheld wages directly from Beverly California on the theory that the wages had not been timely paid into the County Court of Hinds County, Mississippi. Beverly California defended on the basis that all the wages were ultimately paid to MGSLA, although admittedly not on a monthly basis as required by the state court order.

As mentioned hereinabove, the Chapter 13 trustee filed her response to the debtors' complaint. She contends that the wages that were garnished within the 90 day preference period, as well as, those wages that were garnished after the bankruptcy filing should all be considered as property of the debtors' bankruptcy estate. None of the parties challenged the trustee's right to appear in this proceeding. As such, so that this proceeding might be resolved without further delay, the court will consider the trustee as an intervenor plaintiff.

## VI.

### CONCLUSIONS OF LAW

Since all of the monies withheld by Beverly California have now been paid over to MGSLA, the court is of the opinion that the counterclaim filed by MGSLA against Beverly California is not well taken. It will be overruled by a separate order of the court.

The parties all agree that as to those funds withheld prior to the commencement of the 90 day preference period, i.e.,

$692.10, that said monies cannot be recovered pursuant to 11 U.S.C. § 547(b). The court will order that said monies be retained by MGSLA.

 The parties also agree that as to those funds that were withheld after the debtor filed her bankruptcy case, i.e., $844.59, that said monies were garnished in violation of the automatic stay set forth in 11 U.S.C. § 362(a). As such, these wages should not have been withheld pursuant to the writ of garnishment. However, because wages earned post-petition by a debtor in a Chapter 13 bankruptcy case are considered property of the bankruptcy estate pursuant to 11 U.S.C. § 1306(a)(2), these monies must be immediately turned over to the Chapter 13 trustee by MGSLA. Thereafter, they may be utilized to fund the debtor's Chapter 13 plan.

 The most serious issue before the court concerns the wages that were withheld within the 90 day preference period. MGSLA contends that since the writ of garnishment was served before the inception of the preference period that a continuing lien was imposed upon the debtor's wages at the time of the service of the writ, and that, therefore, no preferential transfers occurred within the preference period. The debtor and the trustee, on the other hand, contend that a transfer occurred each time that wages were withheld during the preference period, and that, therefore, the total wages withheld, i.e., $1,203.49, can be recovered for the bankruptcy estate.

The parties admit that all of the requirements of a preference are present in this proceeding except the element set forth in 11 U.S.C. § 547(b)(4)(A), i.e., that the transfers occurred within 90 days of the bankruptcy filing. For reference purposes, 11 U.S.C. § 547(b) is set forth as follows:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

(Hereinafter all references to Code sections shall be considered as Title 11, U.S.Code, unless specifically noted otherwise.)

The parties acknowledge that the withholding of the debtor's wages by her employer pursuant to the writ of garnishment may constitute preferential transfers if the transfers effectively occurred within the 90 day preference period. Section 101(54) of the Code defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption."

When employing § 547(b) to recover wages withheld within the 90 day preference period, § 547(e)(3) must be considered. Significantly, this section states that "for the purposes of this section, (§ 547), *a transfer is not made until the debtor has acquired rights in the property transferred.*" Thus, in the proceeding before the court, the contested issue of law is whether the transfer occurred on the date of the service of the writ of garnishment or when the debtor actually earned the wages. If the date of the service of the writ of garnishment controls, wages earned up to the date of filing bankruptcy can be

deemed outside the 90 day preference period *if* the writ of garnishment were served more than 90 days before the debtor's filing. If the date that the wages were earned controls, all wages earned by the employee and transferred to the garnishing creditor by the employer within the 90 day preference period are recoverable as a preference, while wages earned outside the 90 day period are not recoverable.

### A. *All Transfers Effectively Occur on the Date of Service of the Writ of Garnishment*

*In re Coppie*, 728 F.2d 951 (7th Cir.1984), *cert. denied sub nom.* 469 U.S. 1105, 105 S.Ct. 777, 83 L.Ed.2d 772 (1985), affirmed a bankruptcy court ruling that wages withheld within the 90 day period preceding bankruptcy, pursuant to a garnishment order entered before the preference period, did not constitute an avoidable preference. The bankruptcy judge based his decision on a determination that the Indiana garnishment statute allowed a "continuing lien" on present, as well as, future wages. The circuit court reiterated:

> In Indiana, the garnishee is accountable, from the date the garnishment summons is served, to the plaintiff for any money he owes to the judgment debtor. Ind.Code § 34–1–11–21 (1976). Following a hearing, a court may order, as apparently happened here, that the judgment be a continuing lien on the future income of the debtor, i.e. continuous garnishment. Ind.Code § 34–1–44–7 (1976). At the time of the garnishments at issue here, this continuing lien could not exceed 10% of the debtor's income. Id. ... Following court orders that the liens on these debtors' future income be continuous, the debtors no longer had a property interest in 10% of their future salaries. (citation omitted) Rather, the employers owed that portion of their salaries directly to the garnishment plaintiffs and were liable to the plaintiffs for those amounts if the wages were not withheld pursuant to the court orders. True, the employers were not liable until the wages were actually earned, but once the court orders were entered the debtors were no

longer legally entitled to 10% of their future salaries. Because the court orders legally transferred 10% of the debtors' wages to the garnishment plaintiffs, there were no transfers at the time of the actual garnishments in question. The Bankruptcy Judge ruled correctly that because no transfer of the debtors' property occurred within ninety days of the filing of the petition, there was no avoidable preference....

*In re Coppie*, 728 F.2d at 952–53.

The court went on to specifically address the § 547(e)(3) ("transfer is not made until the debtor has acquired rights....") issue:

> Section 547(e)(3) does not come into play in this case simply because after a garnishment order providing for a continuing lien is entered in Indiana, a debtor will never acquire rights in the portion of his or her wages to be garnished in the future. Once a garnishment order has been entered by a court, the debtor's rights in 10% of his or her future wages are irrevocably transferred to the garnishment plaintiff.

*Id.* at 953.

Two other circuit courts of appeals have ruled that wages withheld during the 90 day preference period are not preferential transfers if withheld pursuant to a prepetition writ of garnishment entered prior to the preference period. *See, Askin Marine Co. v. Conner (In re Conner)*, 733 F.2d 1560 (11th Cir.1984); and *Riddervold v. Saratoga Hospital (In re Riddervold)*, 647 F.2d 342 (2nd Cir.1981). However, neither of these decisions addressed the applicability of § 547(e)(3).

The reasoning of these three circuit decisions has been questioned. 4 *Collier on Bankruptcy*, Paragraph 547.16[7] (15th ed. 1992); Weisberg, *Commercial Morality, the Merchant Character, and the History of Voidable Preference*, 39 Stan.L.Rev. 3, 92 (1986) (criticized *Riddervold v. Saratoga Hospital (In re Riddervold)*). Nevertheless, a few bankruptcy courts faced with a clear and strongly worded state garnishment statute have applied the continuing lien theory. *In re Hughson*, 74 B.R. 438

(Bankr.W.D.Va.1987); *In re Ryder*, 59 B.R. 868 (Bankr.S.D.Fla.1986); *In re Yamamoto*, 21 B.R. 58 (Bankr.D.Haw.1982); *In re TMIC Industrial Cleaning*, 19 B.R. 397 (Bankr.W.D.Mo.1982); *In re Woodman*, 8 B.R. 686 (Bankr.W.D.Wis.1981).

Following the above line of authority, Bankruptcy Judge Edward R. Gaines in the Southern District of Mississippi authored *In re Frierson*, Case No. 89–08437–SEG, Adversary No. 890941SC (March 1, 1990). Judge Gaines held that the service of a writ of garnishment more than 90 days before the debtor's petition in bankruptcy created and perfected a continuing lien on the wages of the debtor and, therefore, no transfer occurred during the preference period. The court sustained a motion filed by a secured creditor requesting the debtor's employer to turn over funds withheld from the debtor's wages. For reasons which will be set forth hereinbelow, this court respectfully disagrees with Judge Gaines.

### B. *Transfers Occur at the Times the Wages are Withheld*

Most bankruptcy courts have held that wages garnished within the 90 day preference period, pursuant to a writ of garnishment served prior to the preference period, are avoidable under § 547(b). *Larson v. Laing (In re Castleton)*, 84 B.R. 743 (Bankr.D.Colo.1988); *Holdway v. Duvoisin (In re Holdway)*, 83 B.R. 510 (Bankr. E.D.Tenn.1988); *Harrington v. Limbey (In re Harrington)*, 70 B.R. 301 (Bankr. S.D.Fla.1987); *Schlossberg v. Finance America Corp. (In re Krumpe)*, 60 B.R. 575 (Bankr.D.Md.1986); *Malone v. Fidelity National Bank (In re Dunn)*, 56 B.R. 275 (Bankr.M.D.La.1985); *Perry v. General Motors Acceptance Corp. (In re Perry)*, 12 C.B.C.2d 927, 48 B.R. 591 (Bankr. M.D.Tenn.1985); *In re Smith*, 45 B.R. 100 (Bankr.E.D.Va.1984); *Roberts v. Household Finance Corp. of Georgia (In re Roberts)*, 44 B.R. 752 (Bankr.N.D.Ga.1984); *Ellenberg v. General Motors Acceptance Corp. (In re Morton)*, 11 C.B.C.2d 969, 44 B.R. 750 (Bankr.N.D.Ga.1984); *Tressler v. Tressler (In re Tressler)*, 41 B.R. 779 (Bankr.D.Del.1984); *Tabita v. IRS (In re Tabita)*, 10 C.B.C.2d 736, 38 B.R. 511

(Bankr.E.D.Pa.1984); *Straight v. Willamette Collection Service, Inc. (In re Straight)*, 35 B.R. 445 (Bankr.D.Or.1983); *Barnes v. McCarthy (In re Barnes)*, 29 B.R. 677 (Bankr.W.D.Va.1983); *Button v. Noe (In re Button)*, 8 C.B.C.2d 475, 29 B.R. 118 (Bankr.E.D.Tenn.1983); *In re Fagan*, 26 B.R. 212 (Bankr.W.D.Ky.1982); *Larson v. Olympic Finance Co. (In re Larson)*, 21 B.R. 264 (Bankr.D.Utah 1982); *Cobb v. Household Finance Corp. (In re Cobb)*, 17 B.R. 687 (Bankr.E.D.Tenn.1982); *Cox v. General Electric Credit Corp. (In re Cox)*, 4 C.B.C.2d 456, 10 B.R. 268 (Bankr.D.Md. 1981); *Mayo v. United Service Auto Association (In re Mayo)*, 6 C.B.C.2d 391, 19 B.R. 630 (Bankr.E.D.Va.1981). These cases held that under § 547(e)(3), the debtor's wages cannot be transferred until they have been earned, notwithstanding the time of the service of the writ of garnishment. Therefore, wages earned, withheld, and paid to the garnishing creditor within 90 days preceding bankruptcy can constitute avoidable preferences even if the writ of garnishment were served before the preference period commenced.

#### 1. *"Plain Meaning" of § 547(e)(3)*

This court feels strongly that a transfer of the debtor's wages cannot occur until the debtor has actually acquired rights in the wages. This court is also compelled to follow the "plain meaning" of § 547(e)(3), the text of which was set forth above. *See, Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 558, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588, 595 (1990); *Toibb v. Radloff*, 501 U.S. ——, ——, 111 S.Ct. 2197, 2199, 115 L.Ed.2d 145, 151 (1991); *Union Bank v. Wolas*, 502 U.S. ——, ——, 112 S.Ct. 527, 531, 116 L.Ed.2d 514, 522 (1991); and *Dewsnup v. Timm*, 502 U.S. ——, ——, 112 S.Ct. 773, 781, 116 L.Ed.2d 903, 921 (Justice Scalia's dissent) (1992).

#### 2. *U.S. Constitution Supremacy Clause*

Section 11–35–23(3), Miss.Code Ann. (1972), provides, inter alia, that a writ of garnishment shall bind the non-exempt percentage of disposable earnings, as provided

by § 85–3–4, Miss.Code Ann. (1991), for such period of time as is necessary to accumulate a sum equal to the amount shown on the writ. Because of the Supremacy Clause found in Article VI, Section 2, of the U.S. Constitution, the statutory language of § 11–35–23(3) must yield to the unequivocal language set forth in § 547(e)(3). Thus, this court is of the opinion that a cognizable transfer occurs when the employer withholds the statutory non-exempt percentage from the debtor's wages. No transfer can logically occur until the debtor has, in fact, earned the wages. This conclusion appears to comport with the recent Fifth Circuit Court of Appeals decision, *Matter of T.B. Westex Foods, Inc.*, 950 F.2d 1187 (5th Cir.1992).

### 3. The Purpose of § 547(b), Coupled with Analogies to Two Exceptions to Preference Avoidance

The underlying purpose of the preference section in the Bankruptcy Code is to promote the equality of distribution to all of the creditors of the bankruptcy estate. If the date of the service of the writ of garnishment is to be the effective transfer date for all successive withholdings of the debtor's wages, then as the withholdings are accumulated during the preference period, the garnishing creditor's position, existing solely by virtue of the service of the writ of garnishment before the commencement of the preference period, is enhanced. This defeats the purpose of § 547(b). This conclusion is bolstered by the effects of § 547(c)(4) and § 547(c)(5), ironically, two exceptions to the preference avoiding powers. For purposes of clarity, factual examples of these exceptions are set forth as follows:

1. Section 547(c)(4), which is known as the "subsequent advance rule," is designed to protect the creditor who extends new value to the debtor during the preference period. This specifically occurs when the creditor provides additional unsecured credit to the debtor after the receipt of a payment which could otherwise be avoided as a preference. For example, assume that a creditor receives a payment within the preference period in the sum of $5,000.00 on an unsecured debt owed by the debtor. Thereafter, the creditor extends new unsecured credit in the sum of $4,000.00 to the debtor before the debtor files bankruptcy. Because of § 547(c)(4), the amount of the avoidable preference is reduced to the sum of $1,000.00. (The $5,000.00 preferential payment less the $4,000.00 subsequent extension of new value.)

2. Section 547(c)(5) applies to secured creditors who have liens on the debtor's assets such as inventory and accounts receivable. The complicated language of this section simply means that the creditor cannot improve its secured position within the 90 days before the bankruptcy filing unless it extends new value to the debtor. For example, assume that on the ninetieth day before the filing of the debtor's bankruptcy case the creditor's claim is secured by inventory having a value of $3,000.00, and on the date of the bankruptcy filing, the value of the inventory has risen to $6,000.00. Unless this creditor has extended new value within the preference period, an avoidable preference exists in the sum of $3,000.00. (The $6,000.00 value at the date of filing less the $3,000.00 value at the inception of the preference period.) However, if new value was given by the creditor, the date that the new value was given becomes the operative date to test the amount of the potential preference as opposed to the ninetieth day before the bankruptcy filing. The extension of new value can, therefore, operate to reduce the amount of the avoidable preference.

This court can understand the reasoning for the two exceptions enumerated above. The creditors have provided something of value to the debtor within the 90 day preference period and, therefore, receive protection to the extent of the new value. Had the creditors in each example provided nothing to the debtor within the preference period, they would have received no reduction whatsoever in the amount of the avoidable preferences.

The garnishing creditor who has obtained the service of a writ of garnishment before the commencement of the preference period can easily be compared to the

secured creditor who holds a pre-preference period lien on the debtor's inventory. Surely if the consensually secured creditor has to provide new value to compensate for the enhancement of its secured position following the commencement of the preference period, a garnishing creditor would have to do the same thing. In the case before the court, MGSLA provided nothing of value to the debtor during the preference period. Therefore, its secured position should not be improved by the withholdings of the debtor's wages within this period. This conclusion is precisely analogous to the aforesaid example involving the secured lender who cannot enjoy an increase in the value of the debtor's inventory within the 90 day preference period unless that creditor gives new value to the debtor. This reasoning leads the court to conclude further that MGSLA should not be permitted to take advantage of the withholdings from the debtor's wages during the preference period.

Those courts which have held that a writ of garnishment is a continuous binding lien on the debtor's wages after the writ is served have overlooked the instructive assistance of § 547(c)(4) and § 547(c)(5). They have also misconstrued the purpose of the preference section. Those courts have allowed the garnishing creditors to improve their positions within the preference period to the detriment of other unsecured creditors while providing nothing of value to the debtor to offset the enhancement of their positions.

For these reasons, the court finds that the garnishment of the debtor's wages within the 90 day preference period is a series of preferential transfers that can be avoided and recovered for the benefit of the bankruptcy estate. As such, MGSLA shall be ordered to immediately remit the $1,203.49, withheld during the preference period, along with the $844.59, withheld post-petition, to the Chapter 13 trustee. Thereafter, these funds shall be used by the trustee to fund the debtors' plan for the benefit of all of the estate's creditors, including, of course, MGSLA.

An order will be entered consistent with this opinion.