**In the Matter of Carl M. KAUFMAN, Jr., Debtor.**

**Michael CHIASSON, Trustee, Plaintiff,**

**v.**

**FIRST TENNESSEE BANK NATIONAL ASSOCIATION, Defendant.**

**Bankruptcy No. 94–12658–JAB.
Adv. No. 94–1267.**

United States Bankruptcy Court,
E.D. Louisiana.

Oct. 4, 1995.

Mark S. Goldstein, Alicia M. Bendana, Howard, Laudumiey, Mann, Reed & Goldstein, New Orleans, LA, for Trustee.

Robert A. Contreras, Demartini, Leblanc, D'Aquila & Volk, Kenner, LA, for First Tennessee Bank Nat'l Ass'n.

## MEMORANDUM OPINION

JERRY A. BROWN, Bankruptcy Judge.

This matter came on for trial on June 19, 1995 on the trustee's complaint seeking avoidance of a preferential transfer under 11 U.S.C. § 547(b). The court has considered the evidence, the memoranda, and the arguments of counsel and makes the following determinations.[1]

### I. *Facts*

Defendant, First Tennessee Bank National Association ("First Tennessee") is a prepetition judgment-creditor of the debtor, Carl M. Kaufman, Jr. ("Kaufman"). To execute on its judgment, First Tennessee instituted garnishment proceedings against Kaufman's employer, Kenneth Gordon of New Orleans, Ltd. ("Gordon"), in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, Case No. 430–886"K".

Pursuant to the garnishment, Gordon transferred the following sums to the Sheriff of Jefferson Parish ("Sheriff's Office") for and on account of the debtor's antecedent indebtedness to First Tennessee:

| Date of Check | Amount |
|---|---|
| May 27, 1994 | $2,738.16 |
| June 24, 1994 | 2,738.16 |
| July 22, 1994 | 2,411.38 |
| | $7,887.70 |

(D.Ex. 1).

Harvey Hernstein ("Hernstein"), a representative of Gordon, testified that Gordon's attorney advised Gordon to pay 25% of Kaufman's disposable earnings to the Sheriff's Office. (*See also* P.Ex. 1). Following these instructions, Gordon deducted $684.54 from Kaufman's paycheck each week, accumulated the funds, and sent checks to the Sheriff's Office each month. As a result, the check to the Sheriff's Office dated May 27, 1994 in the amount of $2,738.16, included $684.54 that was actually withheld on May 6, 1994. (*See* D.Ex. 1). The May 6, 1994 withholding of $684.54 fell outside the 90 day preference period. Thus, Gordon withheld $7,203.16 from Kaufman's wages during the preference period.

Hernstein further testified that Kaufman's earnings were actually draws on his commissions. At the time of the withholdings Kaufman was "in the red" to Gordon, i.e., Gordon had advanced more money to him than he had earned from his commissions. Subsequently, Kaufman's draws were lowered, he made a payment to pay back the amount that was "in the red", and he currently fluctuates

---

1. This memorandum opinion constitutes the court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052. The court has jurisdiction over the matter under 28 U.S.C. § 1334. The matter is a core proceeding under 28 U.S.C. § 157(b)(2).

between "the red" and "the black". It was Gordon's practice to pay its salesmen in advance on a weekly basis.

The Sheriff's Office executed checks payable to First Tennessee that were cashed by First Tennessee as follows:

| Date of Check | Amount | Date cashed |
|---|---|---|
| June 24, 1994 | $2,573.87 | July 11, 1994 |
| June 24, 1994 | 3,217.34 | July 11, 1994 |
| June 24, 1994 | 2,573.87 | July 11, 1994 |
| July 22, 1994 | 2,573.87 | August 12, 1994 |
| Sept. 19, 1994 | 2,266.70 | Sept. 19, 1994 |
| | $13,205.65 | |

Kaufman filed his Chapter 7 bankruptcy petition on August 9, 1994. The trustee currently has only $6.70 available to pay all creditors in this case. Consequently, he has not yet disbursed any monies to creditors.

## II. *Analysis*

### A. *In general.*

The trustee contends that he is entitled to recover as preferential payments under 11 U.S.C. § 547(b) the $13,205.65 received by First Tennessee within the 90 days prior to the debtor's bankruptcy filing. In the alternative, the trustee asserts he is entitled to recover the $7,887.70 paid by the debtor's employer to the Sheriff's Office within the preference period.

First Tennessee argues that under Louisiana law, the seizure of all present and future wages takes place upon the service of the garnishment interrogatories. Consequently, none of the payments are preferential because service of the interrogatories took place before the 90 day preference period. Alternatively, First Tennessee argues that the trustee should only be entitled to the $7,203.16 withheld from Kaufman's wages during the 90 day preference period. In Section 547(b), Congress broadly authorized bankruptcy trustees to "avoid any transfer of an interest of the debtor in property" if five conditions are satisfied and unless one of seven exceptions defined in Section 547(c) is applicable. 11 U.S.C. § 547(b); *Union Bank v. Wolas,* 502 U.S. 151, 155–56, 112 S.Ct. 527, 529–30, 116 L.Ed.2d 514 (1991). In brief, the five conditions of a preferential payment are that the payment must:

(1) benefit a creditor;

(2) be on account of an antecedent debt;

(3) be made while the debtor was insolvent;

(4) be within 90 days before the bankruptcy filing; and

(5) enable the creditor to receive a larger share of the estates than if the transfer had not been made.

11 U.S.C. § 547(b). The parties agree that all conditions except the fourth are met. None of the exceptions are present. Thus, the only issue is whether the transfers took place within 90 days of the bankruptcy filing.

■ The determination of what constitutes a transfer and when it is complete under Section 547(b) is a matter of federal law. *Barnhill v. Johnson,* 503 U.S. 393, 397, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992). The Code defines "transfer" to include "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property." 11 U.S.C. § 101(54).

■ The terms "property" and "interest in property" are not defined in the Code. In the absence of any controlling federal law, interests in property are determined by state law. *Barnhill,* 503 U.S. at 398, 112 S.Ct. at 1389; *Simpson v. Penner (In re Simpson),* 36 F.3d 450, 452 (5th Cir.1994). Similarly, the perfection of a lien by garnishment is determined by the law of the state where the garnishment took place. *In re Latham,* 823 F.2d 108, 110 (5th Cir.1987). Therefore, this court must look to Louisiana law to determine the scope of First Tennessee's interest in the garnished wages.

### B. *The trustee's claim of entitlement to $13,205.65.*

■ The only reported case in Louisiana analyzing the Louisiana Wage Garnishment Law [2] in connection with a preference claim is *In re Dunn,* 56 B.R. 275 (Bankr.M.D.La. 1985). *Dunn* analyzed the Wage Garnishment Law and determined that the debtor retains some ownership interest in seized wages even after service of the garnishment.

---

2. La.R.S. 13:3921, *et seq.*

For example, certain support obligations are to be satisfied from wages, notwithstanding the garnishment. 56 B.R. at 276–77. Also, if the obligation underlying the garnishment is satisfied by collection from a co-obligor, seizure of other property, or discharge of the debt in bankruptcy, then the seizure terminates and the debtor regains full rights to his earnings. 56 B.R. at 276. As a result, *Dunn* concluded that under Louisiana law a garnishment constitutes only a privilege or a lien rather than a transfer of an ownership interest in the debtor's wages. *Dunn,* 56 B.R. at 277.

The *Dunn* court recognized prior cases to the contrary, but pointed out that these other cases did not involve 11 U.S.C. § 547(e)(3) which provides:

> For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

The court held that "[a]lthough a garnishment may be effected prior to the Preferential Transfer Period, the transfer does not occur until the wages are earned". 56 B.R. at 277. Consequently, the wages received by the defendant under the garnishment effected prior to the preferential transfer period were preferential transfers to the extent that the wages were earned during the preferential transfer period.

First Tennessee does not attempt to distinguish the *Dunn* case, but cites several cases for the proposition that under Louisiana law the seizure takes place at the time the garnishee is served with the petition, citation, and interrogatories. For example, in the case of *Sun Sales Co. v. Hodges,* 256 La. 687, 237 So.2d 684, 686 (1970), the Louisiana Supreme Court stated:

> Under Article 2411, LSA–C.C.P., the seizure becomes effective upon service of the petition, citation and interrogatories. In a wage garnishment, the seizure includes both accrued and future earnings. LSA–R.S. 13:3923; [citation omitted]. By virtue of the seizure, the garnishee becomes legal custodian of the wages and holds them subject to further orders of the court. [citations omitted].

*Sun Sales Co.,* 237 So.2d at 686. The *Sun Sales* court recognized that the Louisiana

Wage Garnishment Law brought future earnings within the grasp of wage seizures. *Sun Sales,* 237 So.2d at 687. This holding was followed in the case of *Dunckelman Distributing Co. v. Hyde,* 334 So.2d 236, 239–40 (La.App. 2nd Cir.1976), *cert. denied,* 338 So.2d 294 (La.1976).

Merely because Louisiana law provides that the seizure takes place upon service of the petition, citation, and garnishment interrogatories does not answer the question of the nature of First Tennessee's property interest in the garnished wages. *Dunn* is the only case analyzing the nature of the property interest in garnished wages under Louisiana law in connection with a preferential transfer.

First Tennessee cites three federal cases holding that withholding wages within the 90 day period preceding bankruptcy, pursuant to a garnishment order entered before the preference period, did not constitute an avoidable preference. *See In re Riddervold,* 647 F.2d 342 (2nd Cir.1981); *In re Conner,* 733 F.2d 1560 (11th Cir.1984); *In re Coppie,* 728 F.2d 951 (7th Cir.1984), *cert. denied, Gouveia v. Hammond Clinic,* 469 U.S. 1105, 105 S.Ct. 777, 83 L.Ed.2d 772 (1985). These cases do not apply Louisiana law, and their reasoning has been questioned in several bankruptcy cases. *See Taylor v. Mississippi Learning Inst.,* 151 B.R. 772, 777 (Bankr. N.D.Miss.1993), and cases cited therein; *Dunn,* 56 B.R. at 277–79. The major criticism is that neither *Riddervold* nor *Conner* discussed Section 547(e)(3), while *Coppie* misapplies the legislative history of Section 547(e)(3). *See Dunn,* 56 B.R. at 278.

Most bankruptcy courts have held that wages withheld within the 90 day preference period, pursuant to a writ of garnishment served prior to the preference period, are avoidable under Section 547(b). *See Taylor,* 151 B.R. at 777, and cases cited therein. These cases have held that under Section 547(e)(3), the debtor's wages cannot be transferred until they have been earned, notwithstanding the time of the service of the writ of garnishment. Therefore, wages earned, withheld, and paid to the garnishing creditor within 90 days preceding bankruptcy can

constitute avoidable preferences even if the writ of garnishment were served before the preference period began.

■ This court agrees with the majority view of the bankruptcy court cases. Seizure of a debtor's wages pursuant to a garnishment in Louisiana results in a privilege or lien, rather than an ownership interest in the wages. Section 547(e)(3) defines when a transfer occurs. As quoted above, Section 547(e)(3) provides that a transfer is not made until the debtor has acquired rights in the property transferred. This court is required to apply the plain meaning of a statute except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). This is not a case where a plain meaning interpretation would be at odds with the intentions of the drafters. A debtor cannot acquire rights to wages until the wages have been earned. Thus, a transfer cannot logically occur until the debtor has, in fact, earned the wages. This court agrees with the *Taylor* decision that "a cognizable transfer occurs when the employer withholds the statutory non-exempt percentage from the debtor's wages. No transfer can logically occur until the debtor has, in fact, earned the wages". *Taylor*, 151 B.R. at 778.[3]

■ The trustee argues that the *Barnhill v. Johnson*, 503 U.S. 393, 112 S.Ct. 1386, holding that a transfer made by check is deemed to occur on the date the check is honored, applies in the present case. Under this view, the entire $13,205.65 would be an avoidable preference because First Tennessee cashed these amounts during the preference period, although only a portion of this amount was from wages earned during the preference period.

*Barnhill* did not involve a wage garnishment proceeding, but involved the payment of a "bona fide debt" by check. 503 U.S. at 395, 112 S.Ct. at 1388. The Supreme Court reasoned that a myriad of events might occur after delivery of the check that would result in the check being dishonored, i.e., the drawer could close the account, a third party could obtain a lien by garnishment or other proceedings, and the bank might mistakenly refuse to honor the check. 503 U.S. at 399; 112 S.Ct. at 1390. Thus, the Supreme court held that the transfer occurred on the date the check was honored. The Supreme Court recognized, however, that:

> For the reasons given above, and in particular *because the debtor in this case retained the ability to stop payment on the check until the very last,* we do not think that the transfer of funds in this case can be said to have 'taken effect between the debtor and petitioner' until the moment of honor. [emphasis added].

503 U.S. at 401; 112 S.Ct. at 1391.

In a wage garnishment situation the debtor does not retain the ability to stop payment on the check until the very last. Instead, the seizing creditor has a lien on the wages. Once the wages have been withheld by the debtor's employer pursuant to the garnishment, the debtor has no control over the funds. Consequently, the date of honor rule set forth in *Barnhill* is not applicable in a wage garnishment situation. The trustee's argument that the entire $13,205.65 is avoidable cannot prevail.

C. *First Tennessee's claim that none of the amounts are voidable.*

As discussed above, under the plain meaning of Section 547(e)(3), a transfer occurs in a wage garnishment when the wages have been earned and the employer withholds the statutory non-exempt percentage from the debtor's wages. Thus, even though First Tennessee obtained a lien on Kaufman's wages upon

---

3. In its memorandum, First Tennessee alluded to a decision rendered by the Honorable Thomas M. Brahney in the case of *In re Joseph N. Edwards, Jr.*, 89–13504–B. The court has located the applicable adversary proceeding—*Dengel v. Louisiana National Bank*, 90–1156–B. The *Louisiana National Bank* case does not help First Tennes-see's position because: (1) it did not involve garnishment of wages, and therefore Section 547(e)(3) did not apply; (2) an issue existed as to whether Section 547(b)(5) was met; and (3) Judge Brahney granted the defendant's motion for summary judgment without written reasons.

the service of the garnishment proceedings, a transfer under Section 547(b) could not occur until Kaufman earned the wages. Because a portion of the wages were earned within the preference period, First Tennessee's claim that none of the payments are preferential is without merit.

First Tennessee's argument that it should be allowed to keep all of the seized funds as a matter of equity because it has spent years and thousands of dollars in collecting the amounts in several courts falls on deaf ears when made to a bankruptcy court charged with the duty of affording equal treatment to all creditors rather than rewarding the creditor who wins the race to the courthouse. More specifically, the underlying purpose of the preference action is to promote this equality of distribution to all of the creditors of the bankruptcy estate. *Taylor,* 151 B.R. at 778. As stated in *Taylor:*

> If the date of the service of the writ of garnishment is to be the effective transfer date for all successive withholdings of the debtor's wages, then as the withholdings are accumulated during the preference period, the garnishing creditor's position, existing solely by virtue of the service of the writ of garnishment before the commencement of the preference period, is enhanced. This defeats the purpose of § 547(b).

*Id.* The *Taylor* court went on to discuss the subsequent advance rule and two exceptions to the preference action—the subsequent advance rule and the new value exception. The *Taylor* court concluded:

> The garnishing creditor who has obtained the service of a writ of garnishment before the commencement of the preference period can easily be compared to the secured creditor who holds a pre-preference period lien on the debtor's inventory. Surely if the consensually secured creditor has to provide new value to compensate for the enhancement of its secured position following the commencement of the preference period, a garnishing creditor would have to do the same thing. In the case before the court, MGSLA provided nothing of value to the debtor during the preference period. Therefore, its secured posi-

tion should not be improved by the withholdings of the debtor's wages within this period.

*Id.* at 778–79. The court agrees with the reasoning in *Taylor,* and finds that First Tennessee's position should not be improved by wages withheld during the preference period because it provided nothing of value to the debtor during the preference period. Accordingly, First Tennessee's argument in equity that is it entitled to retain the entire amount received must fail.

### D. *Avoidance of $7,887.70 or $7,203.16?*

Having found that the trustee is entitled to avoid wages earned during the preference period, the court must determine whether the amount to be avoided should be $7,887.70, representing the sums transferred to the Sheriff's Office during the preference period, or $7,203.16, representing amounts withheld from Kaufman's wages during the preference period.

Although Kaufman was employed as a salesman, and the earnings he received were actually advances on commissions, Hernstein's testimony that it was Gordon's practice to make the weekly advances, and clear out any amounts in "the red" at a later date, convinces the court that for purposes of the preferential transfer action, the transfers took place at the time that Gordon withheld the funds from Kaufman's checks. Accordingly, the trustee is entitled to avoid transfers to First Tennessee in the amount of $7,203.16.

Judgment will be entered in accordance with this memorandum opinion.